IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE WASHINGTON HOSPITAL, | ) |
| Plaintiffs, | ) |
| v. | ) Civ. No. 1:13-cv-1607 Pittsburgh |
| SEIU HEALTHCARE INC. PENNSYLVANIA, | ) Judge Maurice B. Cohill |
| Defendant. | ) |

## OPINION

This case is before this Court as a result of a decision by an arbitrator which was adverse to the Plaintiff Hospital and in favor of Defendant, SEIU Healthcare Inc. Pennsylvania, the Union representing Deborah Holden an employee of the Hospital. The Hospital here seeks to overturn the Arbitrator's decision.

The case started along the usual pretrial procedural path; Ms. Holden had been terminated by the Hospital for missing excessive work days in violation of the Collective Bargaining Agreement ("CBA") [ECF No. 1-2], which provided for termination of an employee if she had ten or more "occurrences" of absenteeism within a specified period of time [ECF No. 1-2].

Appendix "I", Section II.B ("Definitions") of the CBA defines occurrences as "one or more consecutive days in which an employee is absent from his or her scheduled work, inclusive of scheduled days off." In addition, Appendix "I" Section III of the CBA ("Progressive Discipline for Occurrences") details the progressive steps taken if an employee is chronically absent. The CBA dictates that after eight occurrences an employee is to receive a written

1

warning; after nine a "Final Written Warning", and Termination upon ten (10) or more occurrences.

We scheduled the 26(f) conference which occurred on March 19, 2014 with all counsel present. At the conference counsel for the Hospital stated that the Hospital had recently become aware that Ms. Holden had been awarded disability benefits by the Social Security Administration, and the Hospital wanted to amend its 26(f) Report to add witnesses and have a period of discovery "in order to determine if Ms. Holden committed a fraud through her testimony at the Arbitration hearing and, as such, her testimony should be disregarded." [ECF No. 14 at ¶ 9] The Hospital filed a Motion to Amend/Correct the 26(f) Report to Include Time for Discovery and Amendment of the Complaint [ECF No. 14].

The Hospital's request added a new dimension to the case. The original Complaint sought to have the Court overrule the Arbitrator's decision because the Arbitrator's award allegedly failed to "draw its essence from the parties CBA and [his decision was] unsupported by the record, the established past practice of the parties, or applicable case law and statute." [ECF No. 1 at ¶ 29] The latest filing seeks to have us allow additional discovery and potentially set aside the award on the grounds of false testimony by Ms. Holden. We will briefly address the Hospital's argument regarding Ms. Holden's alleged fraud on the tribunal. Namely, the Hospital asserts that Ms. Holden withheld crucial information regarding her determination as disabled on March 1, 2013 by the Social Security Administration during the Arbitration hearing on June 28, 2013. Defendant further argues that Ms. Holden's alleged untruthfulness discredits her as a witness and her testimony in its entirety thereby causing the hearing to be disregarded.

We carefully reviewed the transcript of Ms. Holden's testimony at the Arbitration

Hearing. The transcript shows the following dialog between Ms. Holden and Counsel for the Hospital:

> Q: Now, are you presently working?
> A: No, I'm not.
> Q: Is there a reason you're not working at the present time?
> A: I am currently collecting unemployment and I am looking for other employment. I just have not found the right job.
> Q: You're not representing that you're incapable of working?
> A: No, I am not.
> Q: You just have not found a job.
> A: I have not found a job.
> Q: Have you made applications to any health care facilities for work?
> A: No, I have not. I have been going on the job search for LPN positions, because I have a license. I have looked at them, and currently I can't go per se to an interview, because my vehicle is down, has been down since I have been terminated. I have been attending anything that the unemployment people have told me I had to attend.
> Q: So does that mean you're not actively, you're not capable of interviewing for a job because your motor vehicle is not operable?
> A: That's what I'm currently saying, but I am still looking at different sources for jobs.
> Q: How many applications have you made for employment since your termination?
> A: I have not made any applications for any other employment until after today's hearing.
> Q: So it would be fair to state you have not actively attempted to mitigate your situation by gaining other employment?
> A: That would be true.
>
> [ECF No. 1-3 at 85-87].

Obviously Ms. Holden was not asked any questions about a social security disability claim, nor did she volunteer any information along these lines. Thus, she cannot be said to have lied in her testimony. Furthermore, we do not see how this issue is relevant to the Arbitrator's decision which was based on the his assigned task to interpret the CBA terms. Based on our review, we will deny the Hospital's Motion to Amend the Rule 26(f) Report to have additional discovery.

3

The next issue initially caused the Hospital to file the Complaint in this case: The underlying issue is whether the Arbitrator failed to draw his decision from the essence of the CBA. It is well established that the Supreme Court of the United States does not favor challenges to arbitration awards. The Supreme Court stated in the familiar "Steelworkers Trilogy" that the bedrock tenet of labor arbitration is that the arbitrator does not sit to create new terms for the parties or impose on them his own idea of what the labor contract should provide, but rather is hired to read the contract, determine the parties' mutual intent, and enforce the contract as written. See Steelworkers v. American Mfg. Co., 363 U.S. 564 (1960); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); Steelworkers v. Enterprise Wheel & Car Co., 363 U.S. 593 (1960). [ECF No. 23 at 17]. An arbitrator's award is "legitimate only so long as it draws its essence from the collective bargaining agreement. . . . He may, of course, look for guidance from any sources," however, "he does not sit to dispense his own brand of industrial justice.'" Steelworkers v. Enterprise Wheel & Car Co., 363 U.S. at 597.

In its latest pronouncement on the subject, Oxford Health Plans, LLC v. Sutter, 133 S.Ct. 2064 (2013), the Supreme Court referred to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., stating that Section 10(a)(4) permits vacating an arbitrator's decision only where "the arbitrator strayed from his delegated task of interpreting a contract, not when he performed the task poorly." Oxford, 133 S.Ct. at 2066. In this case, the testimony revealed that Ms. Holden had not received the Written Warning as required by the CBA where she had nine but less than ten occurrences, nor had she received the required final written warning prior to her termination for having accumulated ten occurrences.

The Arbitrator drew attention to these facts in his decision. It certainly cannot be said

that this finding did not come from the *essence* of the contract; it came from the literal words of the contract itself. The Hospital counter-argued that there was a practice not to follow all of the progressive steps and sometimes the Hospital skipped giving the warnings called for in the CBA. The Arbitrator found, and we agree, the steps laid out in the CBA were obviously intended to warn the employee of serious potential consequences if he or she did not take steps to avoid being charged with future occurrences. Skipping those warning steps on occasion would not provide the employee with the parties' intended goal to give the employee a chance of correcting the situation. We also note that the Arbitrator did not award Ms. Holden any back pay due to her failure to look for alternative work.

We find that Ms. Holden did not lie under oath at her hearing, as she was not directly asked about a finding of disability under the Social Security Act, nor would such an event be relevant to the case before the Arbitrator. We also find that the Arbitrator's award to Ms. Holden was derived from the essence of the Contract.

An appropriate Order follows.

August 2⁰, 2014

Maurice B. Cohill, Jr.
Senior District Court Judge